COURT OF APPEALS
DECISION
DATED AND FILED

June 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1555-CR**

Cir. Ct. No.  **2021CT741**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JUSTIN J. KAHLE,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: J. ARTHUR MELVIN, III, Judge. *Affirmed*.

¶1 GROGAN, J.[1] Justin J. Kahle appeals from a judgment entered after he pled guilty to operating a vehicle under the influence of an intoxicant, third offense, contrary to WIS. STAT. §§ 346.63(1)(a) and 346.65(2)(g)2. Kahle challenges the circuit court's decision to deny his motion to suppress, claiming that he was unconstitutionally seized when a police officer parked his squad car in front of Kahle's truck and illuminated the truck with a spotlight.[2] This court affirms.

## I. BACKGROUND

¶2 The following facts are from testimony at the hearing on Kahle's motion to suppress. At around 12:15 a.m. on May 31, 2021, Officer Aeriond Liu noticed a pickup truck parked diagonally across several parking spaces in the middle of a nearly empty Pick 'n Save parking lot. The vehicle had its parking lights on, and its engine was running. Although the Pick 'n Save store was closed, the regular stocking crew that worked the night shift was taking a break outside. Officer Liu was familiar with this crew because he patrolled the area over several years, and he asked the workers whether the truck belonged to any of them. The

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted. Kahle filed a motion asking that this case be decided by a three-judge panel pursuant to WIS. STAT. Rule 809.41(1)(a). This court held the motion in abeyance pending completion of briefing. This court concludes that Kahle's motion failed to demonstrate that a three-judge panel is appropriate. Therefore, his motion is denied.

[2] This case does not involve a traffic stop, which is unquestionably a seizure. *See State v. Floyd*, 2017 WI 78, ¶20, 377 Wis. 2d 394, 898 N.W.2d 560 ("It is an unremarkable truism that a traffic stop is a seizure within the meaning of our Constitutions."). Rather, the issue presented here is whether a police officer's acts to investigate a car parked with its engine running in an empty parking lot of a closed store shortly after midnight constituted a seizure.

workers indicated that they did not recognize the truck and said that it had parked there "a while ago."

¶3    Officer Liu then drove his squad car over to the truck. He parked his squad car in front of and facing the truck ("nose to nose") and left a space of about one car length between the two vehicles. The driver of the truck would have been able to leave by either driving forward around the squad car or by backing up. However, the truck did not move. Officer Liu turned on his spotlight, walked over to the passenger's side of the truck, and lightly knocked on the window.

¶4    The driver and sole occupant of the truck was Kahle. When Kahle rolled the passenger's side window down, Officer Liu detected the odor of intoxicants. He also noticed that Kahle had bloodshot eyes and slurred speech. When he asked Kahle whether he had been drinking that evening, Kahle admitted he had consumed "six or seven beers" at a bar before he drove to the Pick 'n Save parking lot. Officer Liu then had Kahle attempt standardized field sobriety tests, which Kahle failed. Kahle's blood alcohol test showed that he had 0.210 grams of alcohol per 100 milliliters of his blood. He was arrested and charged with operating a motor vehicle while under the influence and operating with a prohibited alcohol concentration, both as third offenses.

¶5    Kahle moved to suppress evidence on the grounds that Officer Liu's conduct of parking in front of his vehicle and shining a spotlight on his truck constituted an unreasonable seizure not supported by reasonable suspicion. The circuit court denied his motion and found that Kahle's initial contact was consensual like the encounter in *County of Grant v. Vogt*, 2014 WI 76, ¶51, 356 Wis. 2d 343, 850 N.W.2d 253, and the combination of the squad car's placement and the spotlight did not constitute a seizure because Kahle could have disregarded

the officer's attempt to make contact and driven away. Kahle ultimately pled guilty to the charge of operating a motor vehicle while under the influence, third offense, and received a sentence of 100 days in jail, which was stayed pending resolution of this appeal.

## II. DISCUSSION

¶6      The issue is whether Officer Liu's acts of parking his squad car facing Kahle's truck and shining his spotlight toward Kahle's truck constituted an unconstitutional seizure. Review of a decision as to whether someone has been seized is a mixed question of fact and law. *Id.*, ¶17. "This court will uphold the circuit court's findings of fact unless they are clearly erroneous, but the application of constitutional principles to those facts presents a question of law subject to de novo review." *Id.* Likewise, reviewing a circuit court's decision "denying a motion to suppress evidence presents a question of constitutional fact, which requires a two-step analysis on appellate review." *State v. Meisenhelder*, 2022 WI App 37, ¶7, 404 Wis. 2d 75, 978 N.W.2d 551, *review denied* (WI Oct. 11, 2022) (No. 2021AP708-CR). "'First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts.'" *Id.* (citation omitted).

¶7      "The Fourth Amendment of the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect people from unreasonable searches and seizures." *State v. Young*, 2006 WI 98, ¶18, 294 Wis. 2d 1, 717 N.W.2d 729. Wisconsin courts generally construe our state constitutional protections in the same way that the United States Supreme Court interprets the Fourth Amendment. *Id.*, ¶30.

4

¶8      A seizure occurs "'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'"  ***Vogt***, 356 Wis. 2d 343, ¶20 (quoting ***United States v. Mendenhall***, 446 U.S. 544, 552 (1980)); ***Young***, 294 Wis. 2d 1, ¶34.  To be clear, not every encounter with police is a seizure under the Fourth Amendment.  *See **Florida v. Bostick***, 501 U.S. 429, 434 (1991).  Police officers do not infringe on the right against unreasonable seizures simply by approaching people on the street or in other public places and asking them questions if they are agreeable to listen.  *See **United States v. Drayton***, 536 U.S. 194, 200 (2002); *see also **Vogt***, 356 Wis. 2d 343, ¶¶24-26.  Under the ***Mendenhall*** test—which controls in Wisconsin in cases like Kahle's where a person cooperates with an officer—"'a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  ***Vogt***, 356 Wis. 2d 343, ¶20 (quoting ***Mendenhall***, 446 U.S. at 554).  Examples of circumstances that might suggest a seizure include "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'"  ***Vogt***, 356 Wis. 2d 343, ¶23 (quoting ***Mendenhall***, 446 U.S. at 554).

¶9      Wisconsin courts have had ample opportunities to apply and develop the ***Mendenhall*** test.  In ***Vogt***, our supreme court held that an armed police officer parking behind a car parked in an empty parking lot at 1:00 a.m., approaching the parked car in full uniform, and knocking on the parked car's window to ask what the driver was doing, did not constitute a seizure.  ***Vogt***, 356 Wis. 2d 343, ¶¶4, 7, 41, 43.  The officer did not use physical force or show authority but instead simply investigated an unusual situation.  ***Id.***, ¶¶20, 51.  The court explained:

> [The officer] was acting as a conscientious officer. He saw what he thought was suspicious behavior and decided to take a closer look. Even though Vogt's conduct may not have been sufficiently suspect to raise reasonable suspicion that a crime was afoot, it was reasonable for [the officer] to try to learn more about the situation by engaging Vogt in consensual conversation.
>
> ….
>
> … The circumstances attendant to the knock ... [we]re not so intimidating as to transform the knock into a seizure.

*Id.*, ¶¶51, 53.

¶10    There are also numerous recent appellate cases with facts similar to Kahle's that this court can look to for persuasive value. *See* WIS. STAT. RULE 809.23(3)(b). *State v. Mullen*, Nos. 2019AP1187 and 2019AP1188, unpublished slip op. ¶¶3-6 (WI App May 20, 2020), dealt with a situation in which an officer parked his marked squad car behind an individual's vehicle in a parking lot. The individual was standing on the curb when the officer shined a high-intensity spotlight on him and his vehicle and then initiated conversation. *Id.*, ¶¶4-7. The *Mullen* court held that under the totality of the circumstances, which included "the use of the spotlight," no emergency lights, "no verbal commands," and "no effort to block Mullen's vehicle," there was no seizure. *Id.*, ¶25.

¶11    The positioning of an officer's squad car, insofar as it affects the ability of a person to decline interaction and leave the area, has been an important factor in determining whether there is a seizure. In contrast to *Mullen*, where Mullen could have pulled his vehicle forward to leave the parking lot, *Id.*, ¶3, the defendant in *State v. Evans*, No. 2020AP286-CR, unpublished slip op. ¶2, (WI App Jan. 28, 2021), was boxed in at a hotel parking lot by the simultaneous arrival of two squad cars, both of which shined their spotlights on his vehicle. The *Evans*

court stated that the fact that the defendant would have had to maneuver in reverse between two squad cars—one of which was pulled up perpendicular to the driver's side of the vehicle in an "'adversarial'" way, and both of which were within a few feet of the vehicle—contributed to a conclusion that a reasonable person would not have felt free to leave under the circumstances, and thus, the police behavior constituted a seizure. *Id.*, ¶¶23, 29 (citation omitted). Similarly, in *State v. Christensen*, No. 2022AP500-CR, unpublished slip op. ¶¶5, 7 (WI App Sept. 9, 2022), officers pulled in approximately ten feet behind the defendant's car, which was parked in the corner of a parking lot, and shined their spotlight on the vehicle. Again, the fact that it "would have been 'very difficult' for [the defendant] to drive out of the lot past the police truck" was critical to the finding that a reasonable person in the same circumstances would have felt he was not free to drive out of the lot, and therefore those facts demonstrated a seizure occurred. *Id.*, ¶¶22-23, 25.

¶12 The circumstances in Kahle's case are more akin to those in *Mullen* and *Vogt* than those in *Christensen* and *Evans*. This court agrees with the circuit court's conclusion that because a reasonable person in Kahle's position could have driven away and disregarded the officer, there was no seizure implicating the Fourth Amendment before Officer Liu smelled the odor of intoxicants coming from Kahle's vehicle.

¶13 None of the factors suggestive of seizure listed in *Mendenhall*—including the threatening presence of multiple officers or aggressive language or tone of voice—were present here. *See Vogt*, 356 Wis. 2d 343, ¶23. Officer Liu positioned his squad car nose to nose with Kahle's vehicle, but he left plenty of space between his car and Kahle's truck; Kahle could have simply driven away either forward (around the squad car) or in reverse. Officer Liu used the spotlight

to see what was going on in Kahle's vehicle and for safety (his own, in case of ambush, and Kahle's, in case he had a medical emergency). Although Kahle now asserts that the spotlight had a "disabling effect" on him such that he could not have safely driven away, the circuit court was correct in noting that there is no evidence of this in the Record. Kahle argues that the officer's testimony on cross-examination supports his "disabling effect" assertion. Specifically, he points to defense counsel's question as to whether police use the spotlight to "disable[] a person in a way" that "prevents [the person] from seeing officers as they approach." Officer Liu answered that a spotlight "can be used that way" and conceded that the spotlight may have prevented Kahle from seeing that Officer Liu was approaching the passenger's side of the car instead of the driver's side. Nevertheless, there is no testimony that the spotlight prevented Kahle from driving away. It was not "so intimidating," and it did not make it "very difficult" for Kahle to drive away. Given that only one spotlight was shining at Kahle from the direction in front of his vehicle, he has offered no explanation for why he could not look away from the light and reverse to drive out of the nearly empty lot.

¶14 Kahle criticizes decisions such as *Young*, suggesting that they reflect an "inherent flaw" in the *Mendenhall* test because they fail to account for the behavior of real-life people who are socially conditioned not to disregard an officer. He claims that these decisions are improperly influenced by policy considerations, such as the desire not to discourage the use of spotlights, for example, that might increase officer safety, even though such tactics actually make real-life people feel compelled to interact with police. Wisconsin courts have repeatedly acknowledged that "[t]he seizure test is necessarily objective, but it is complicated by the tendency of people to defer to a symbol of authority no matter how it is manifested." *Vogt*, 356 Wis. 2d 343, ¶31 (footnote omitted). "However,

a person's consent is no less valid simply because an individual is particularly susceptible to social or ethical pressures." *Id.* This court declines Kahle's invitation for it to deviate from applying the "innocent reasonable person" standard.

¶15     Finally, setting his criticisms of the *Mendenhall* test aside, Kahle argues that the circuit court misapplied the law to the facts of his case, even under the innocent reasonable person test, suggesting that there are factors other than the use of a spotlight and placement of vehicle that should have been considered by the circuit court but were not. The only additional details Kahle points to are Officer Liu's "full police uniform," including his holstered firearm, Liu's act of knocking on the passenger's side window, and the unsupported assertion that Liu approached in an adversarial manner. *Cf. Evans*, No. 2020AP286, ¶23 (discussing squad car's "'adversarial'" approach, parking across several parking spaces very close to and perpendicular to defendant's vehicle (citation omitted)). The facts of the police uniform and the knocking on the window of the vehicle are typical in situations where police officers are investigating parked cars, and they were present in the cases discussed above. *See, e.g.*, *Vogt*, 356 Wis. 2d 343, ¶7; *Mullen*, Nos. 2019AP1187 and 2019AP1188, ¶6. Kahle does not explain how these additional details change the analysis, and this court, having already examined them in its consideration of the totality of the circumstances, remains unconvinced that either (the police uniform or knocking on the window) transformed this police contact into a Fourth Amendment seizure. As for Kahle's assertion that the officer used an "adversarial" approach, nothing in the Record supports his self-serving claim.

¶16     This court concludes that Officer Liu's use of a spotlight to illuminate Kahle's vehicle—when there was no effort to block Kahle from leaving

the parking lot and no other significant show of force or coercion—did not amount to a seizure. A reasonable person would have felt free to leave and could have done so. Accordingly, the circuit court properly denied Kahle's suppression motion, and this court affirms.[3]

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] In his Reply brief, Kahle asks this court to apply the forfeiture rule, asserting that the State conceded arguments Kahle made in his brief-in-chief by not specifically addressing them in its Response brief. This court declines Kahle's request. The Response brief sufficiently responded to Kahle's arguments so as to give this court the ability to analyze the issue raised.